Thank you. Good morning, and may it please the court. My name is Dan Siegel. I represent the plaintiffs and appellants in this matter, which presents the issue of whether we have successfully alleged the plaintiff's standing to bring this suit. The university takes what I believe to be a remarkable position by resting its argument on the simple assertion that none of the plaintiffs is currently an enrolled student at the University of North Dakota. Were that to be the requirement for standing in this or any other case challenging unlawful admission or other requirements for students, a school could simply exclude women students altogether and then assert, if they were sued, that the people who sued them lacked standing because they weren't students. What do you do with the simple black-letter sentences in the Granson case? I won't read them to you. I bet you're familiar with them. But what do you do with some of those that a plaintiff lacks eligibility and is no longer a student is an adequate basis to dismiss an individual Title IX claim or a 2001 case? In Granson, Your Honor, the factual situation was far different, and the court's conclusion, I believe, was based upon the simple fact that none of the plaintiffs there could possibly benefit from a ruling in their favor. Three had no further NCAA eligibility to play college sports, and the fourth, who had withdrawn from school, would not have a claim because the university had reinstated the program whose loss was being challenged. So it wasn't simply the lack of students' status, but standing was viewed in the context of whether the students could meet the standing requirements, and none of them could show that there was an injury, in fact. And I believe that's a sufficient basis for distinguishing the decision in that case. I get it when there's no eligibility left. That is a problem. But what about the argument, which I think Granson might have been getting at, which is that if, you know, North Dakota doesn't have 100 percent admission rate, and without having been admitted before, you don't have any idea whether a non-student, even if they have the intent to go there, will actually benefit from this decision. So what do you make of the fact that at least some of these folks have never been admitted, the plaintiffs? Your Honor, I think that that is an important issue, and I would answer the question in two ways. First of all, the issue of standing is a recurring one in litigation of this type. We're dealing with standing as of the date the complaint was filed. And for purposes of the matter before you, I submit that it must be evaluated in this context. Later on, motion for summary judgment, motion for class certification, motion for injunctive relief. The practical impact of standing will be posed sharply as the trial court determines whether any of the plaintiffs are eligible and can indeed obtain relief. Counsel, has the Eighth Circuit ever held that a non-student has standing in a case like this? Your Honor, I don't believe that that issue has come to the Court, to this Court, framed in the manner in which it's framed here. And I would submit that there are many factors that need to be considered, factual allegations in the complaint with respect to the standing of the plaintiff. And I would quickly list them. All four are women. All four are residents of North Dakota. All four are dedicated and accomplished ice hockey players. Three of the four students, and I think perhaps this is most pertinent to your question, Your Honor, were accepted by the University of North Dakota. One was recruited to play hockey. The other two applied and were accepted. So unlike members of the general public, three of the four established their eligibility to attend the school. What about the one that wasn't? That gets back to my earlier question. If the person was never, you know, I'd love to go to Harvard and play hockey, but, you know, Harvard's got admission standards, and they may not let everybody in. They have a very low admission rate. So what do you do in a situation where the person's never been admitted? Well, the question is, will they be able to show? Right? I mean, and, you know, candidly, we don't have a problem if three of the four meet the Court's tests. But Ms. Becker, like the others, indicated that she wanted to play hockey at North Dakota and is a high school graduate. Now, it might be an issue. Counselor, doesn't it have to get above that level of wanting to do something that it has to get more concrete or likely to probable those concepts in order for standing to be present? You know, again, Judge Smith, I'm not sure I want to hang my hat here on Ms. Becker's qualifications, when I have three other plaintiffs who have satisfied the university's admission criteria, and one was actually recruited there to play ice hockey. And really, as the decisions of this Court and others have pointed out, at the end of the day, it's a matter of the court. At the end of the day, you really just need one individual with standing who has been injured by the denial of a right protected by law. All of that is true, but if we were to send this case back, we would also probably need to dismiss the plaintiffs who do not have standing, right? We couldn't allow the entire case to go back. We'd have to say, this goes back as to, say, Ms. Forsberg, but not as to the others, wouldn't we? Well, if the Court's decision was based upon the conclusion and requirement that in order to establish standing, the plaintiffs would have to show themselves eligible for admission to the University of North Dakota, I would submit that the pleading in this case would have to go back. And Ms. Becker did not apply. She cannot allege that she applied, and she could not admit — allege that she was admitted, although if it came down to it, she could allege that she meets the requirements for admission to the university or did when she graduated from high school. Could you talk to us — so, you know, I inserted that name in for a reason. I actually think that's your strongest plaintiff, is Ms. Forsberg, and so I'd like to hear from you as to your best argument as to why your strongest plaintiff has standing. Okay. Well, I'm happy to do that, but what I want to emphasize is that the jurisprudence under Title IX establishes that the wrong that is being challenged here is the barrier, right? The University of North Dakota had to set up a barrier to women who want to attend that school and play ice hockey. And it's an absolute barrier, and that's the barrier that we're challenging. And I think that that barrier prevents all of the plaintiffs, all four of the named plaintiffs, from being able to exercise their rights to attend a university and to play athletics without a discriminatory barrier placed before them. And it gives — to look at the case otherwise gives too much deference to the university and, in effect, allows it to create barriers and then stand behind them and proclaim that it's impossible for plaintiffs to show that they were personally affected by them. I think the presumption ought to go the other way. Well, I think — I don't know that there — I honestly — I think that overreaches, because I think what they're saying is that certain people could have sued, it's just not the plaintiffs, which is why I'm trying to direct your attention to Ms. Forsberg, because she's the closest call of all of them, I think, or at least the one where you have the strongest case. You may disagree. You may think all four go forward, but I think you'd admit that that's probably the strongest one. Certainly. I mean, she has shown that she meets the requirements not only for admission, but meets the requirements to play ice hockey at the university, because she was recruited and admitted to the university for that purpose, and as a result of the termination of the program has been prevented. The barrier was successful in preventing her from exercising the right. And did she have — did you plead that there was a firm intention by her to return to North Dakota and to play ice hockey if they reinstated the program? We pled that all four had the intention of attending the university were the ice hockey program to be reinstated. Does she still have eligibility? Because, one, I know we're here on standing, but I want to make sure that the case isn't actually moot, because it's been a while since it was at the district court. I believe she still has standing. Okay. Well, boy, she was at North Dakota in 2016, and she went to Bemidji, and she still has eligibility this many years later, eight years later? I don't believe she utilized all of her opportunities. Okay. If I may reserve the remainder of my time. Thank you. You may, Mr. Siegel. Mr. Hudson. May it please the Court. The Supreme Court has long held that Article III requires plaintiffs seeking injunctive relief to show injuries that existed or were certainly impending when they filed suit. This rule helps keep Federal courts to their proper role of deciding concrete cases. And in the Title IX athletics context, it means that a student injured by their school's lack of a team does have standing to seek injunctive relief. Such Title IX cases are quite common. But because people are not injured by athletic policies at universities they do not attend, a plaintiff does not, for example, have standing to sue the hundreds of schools that lack women's hockey teams simply by declaring that they have applied and would attend. This Court recognized precisely this point in Granson, where it held that the fact that a plaintiff, quote, lacks eligibility or is no longer a student is an adequate basis to dismiss an individual Title IX claim for injunctive relief. Was the plaintiff there not even a varsity sport participant? Is that true? The plaintiffs there were students initially. So there was initially standing to honor. Yes. And that was a mootness. But they weren't varsity athletes, were they? Well, as Mr. Stegall pointed out, some of the plaintiffs were varsity athletes and lost their eligibility, which is why they were why the case was moot as to them. And then one of the students was not a varsity athlete. Right. And that's why her claim was moot. Exactly. And the point, I think, in Granson that illustrates the broader point, it, of course, is a mootness case, but it illustrates the point that an individual who is not a student at a university is not affected by that university's athletic policies. I don't think that categorical rule can work, because here, and I want to just turn your attention to who I kept asking about with opposing counsel, Ms. Forsberg. And so, arguably, she has more of an interest than a current student, because she played for the team, she was admitted to the North Dakota at one point, she transferred only because the program was eliminated, or so it's been alleged, and she has a definite intention to return. So we know that she has the skill level to play hockey, we know that she has the credentials to get into the University of North Dakota, and she was directly injured in the past by the elimination of the program. So I actually am having a very hard time seeing how Ms. Forsberg does not have standing. A couple points, Your Honor. First of all, Ms. Forsberg never played for the university. She never applied to the university, nor was accepted. Do we know that? Because you'll agree that the complaint pleads something entirely different. No, the complaint does not plead that she was admitted or enrolled. The complaint pleads that she was recruited in 2016, which would have been when she was 16 years old in high school. And the we include her. Doesn't the complaint use the word transferred, that she transferred from North Dakota to Bemidji? If I'm saying it right, I'm a Missourian. The brief indicates, not the complaint, Your Honor, but Mr. Siegel's brief indicates that she transferred. What does the complaint say? That would really help me, truly. Yes, absolutely. What does the complaint say? Yes. Is the language right? The complaint says Ms. Forsberg is a skilled ice hockey player and was recruited from high school to play on the North Dakota women's intercollegiate ice hockey team in 2016, which would have been when she was 16 years old. After the university eliminated the women's ice hockey team at the conclusion of the 16th season, Ms. Forsberg decided to attend Bemidji State University in Minnesota. Look at the next sentence, though. She would have remained at UND if the ice hockey program had not been eliminated. To me, remained means you were there in the first place. And, Your Honor, even if the court were to construe the complaint that way, it is categorically rejected by the declaration that the university submitted of the registrar, the Correll declaration that specifically indicated that neither Ms. Becker nor Ms. Forsberg ever applied to the university. But did the district court actually consider it that way? See, I viewed it as a facial attack on jurisdiction. So I'm not sure the court ever got to the facts, any factual dispute. Now, maybe you'd say we can do that on our own, but that does worry me when you have an appellate court making factual determinations. I think that's right, Your Honor. But I think the point, I think, is the district court. And ultimately, I don't think these factual disputes are relevant. As I indicated, in our view, a student has standing. A non-student doesn't have standing. So in our view, the factual disputes don't matter. And I think it is fair to say that there is no dispute that Ms. Stenseth was, did apply to the university, was accepted. She was at the university for two months, withdrew, and was not a student at the time she filed the complaint. And if I could address your question about historical injury, because I do think that's an important question. The complaint isn't quite clear about Ms. Stenseth, but let's say the complaint could be interpreted to mean that Ms. Stenseth would have tried out for the women's hockey team if there had been a team when she was a student at UND. Let's just grant that for a moment. If the complaint had said that, that would be a historical injury. Absolutely. But the Supreme Court and this Court have been crystal clear that a plaintiff seeking injunctive relief can't merely rely on a historical injury, but needs to show either an existing injury or a certainly impending injury. And an individual, and that's Lujan, that's Lyons, that's this Court's case in the Sioux City case. But Lujan says that a definite intention can suffice as a future injury. And I think that the existence of a past injury makes it more plausible that a future injury is imminent. Right? So if you have this historical injury, you then say, I want to come back if they, you know, if they reinstate it. That seems to me to be different from somebody saying, well, you know, I'm 5,000 miles away, but I'd come back and play even though you've shown no intent in the past to attend UND. Well, I think, Your Honor, Lujan is illustrative of this point. The plaintiffs in Lujan had been to the wildlife-sided issue and had alleged generally their intention to return. And the Supreme Court said, that's not good enough. You need to take concrete steps. Buy the plane ticket. Similarly, in the Supreme Court's recent decision in Carney v. Adams, we had a plaintiff who said, I'm interested in being a judge. I'm ready and able to apply to be a judge. I think I would be a good judge. And the Supreme Court said, that's not enough. Even though it would have, indeed, in Carney v. Adams, the plaintiff clearly would not have been eligible because of the partisanship rules in Delaware. And the Supreme Court said, we need to see an application. Otherwise, the rules aren't directly affecting you. And that's the situation we have here. And I think it's important to note. And the past application is not enough? The fact that at least some of the plaintiffs have applied in the past and gotten accepted? I don't think so, Your Honor, because, again, there's still future contingencies. And I do want to point out, I do think this is important, that there's no dispute that at the time the complaint was filed, the acceptances were no longer effective. So there's no question that in order to actually have an injury, the plaintiffs would have needed to apply, be admitted again, then decide to enroll. But the implication of your rule, especially if we look at it from a mootness perspective, is you would need to reapply serially, right? So if the acceptance is effective for four months, you'd need to apply essentially every four months to UND to keep a live stake in the controversy, wouldn't you? Well, in our view, Your Honor, you need to be a student. And once you're a student, right. That's fair. And so, yeah, once you're a student, of course. And I do want to underscore. Well, counsel, for an athlete that wants to play hockey, wouldn't it be futile to apply and get accepted to a university that doesn't have a program? I don't think it would be futile, Your Honor.  You can't seek preliminary injunctive relief. And there can be a – there's a dispute there as to whether or not that particular university is required under Title IX to have a program. And, indeed, it's worth noting that this is not a problem. There are many Title IX cases. So your view is that no non-student can ever have a Title IX action? In the athletics context, at the very least, yes. And the reason is simple, that people who are not students aren't affected by a university's decision whether or not to have a team. And it's – What about ordinary students, people who aren't hockey players? What if they alleged – I want to see how many plaintiffs there actually are in your mind. And so could somebody have said, oh, I'd really like to go to a women's hockey game. I love women's hockey. I went to women's hockey games when I was in high school. My team – you know, my school had one. Are they eligible even though they wouldn't participate in the hockey program as an athlete? From an Article III point of view? Yeah. That's a difficult question under TransUnion, Your Honor, whether that injury is concrete. That's a different sort of question than we have here because there's no real dispute here about the concreteness of an injury. The absence of a team for someone who wants to play, that injury is concrete. There's no doubt about it. The question here is really about whether it is certainly impending for a non-student. But that gets to the Chief's question, which is why I was asking the question that I was asking, which is we're talking about a very small class of plaintiffs. A, why would somebody apply if they want to play ice hockey? But I think the more pertinent question is why would somebody want to remain at a school with no ice hockey rather than transfer to another school with an ice hockey program? Now we're talking about where are the plaintiffs? Who could possibly be a plaintiff in a case like this one? Right. And I think it's worth noting that we see those cases all the time. We regularly see people bring Title IX cases. In fact, every Title IX case, every single Title IX case cited in both of the parties' briefs involved plaintiffs who were students of the university challenging their university's decision not to have a team. So the rule adopted by the district court below is not going to foreclose any lawsuit that we could find in the Federal Reporter. And I think that's a really, really important point. And it also, the rule adopted by the decision below is a nice, clear, easy-to-apply rule, which is especially important in the jurisdictional context. And, indeed, the plaintiffs have failed to identify any case from any jurisdiction that confers standing on a plaintiff to seek Title IX adjunctive relief against the athletic policies of a school they do not attend. And we have a few cases that address this issue in the context of Title IX. And all of them support the decision below. Consider, first, the Fifth Circuit's decision in Peterson. So in Peterson, the plaintiffs were students at LSU. So they clearly had standing to challenge the absence of a women's soccer team at LSU. The students, in addition to challenging the absence of a women's soccer team, challenged the alleged discriminatory treatment between women's varsity athletes and men's varsity athletes. And the Fifth Circuit said, those plaintiffs do not have standing to challenge that discriminatory treatment because they were not, at the time the complaint was filed, varsity students, even though, hypothetically, they could eventually become varsity students in light of the Court's decision as to the first issue. And that shows the need for certainly impending. And I — and so, also, after Peterson, we have two district court cases, the Bider v. Quinnipiac case and the Anders v. Fresno City case, which address exactly this issue in the class action context. Both of those cases involved Title IX claims challenging the lack of teams. In both of those cases, the named plaintiffs were students at the university in question and so clearly had standing, no doubt. The plaintiffs, though, sought to include in the class definition students who would be deterred from attending the university in the first place, so who were not students and were simply deterred from attending the university. And the district courts in both of those cases said, those plaintiffs can't be included in the class because they don't have Article III injuries. There's no certainly impending injury for non-students. What about the non-student that sells hot dogs outside the stadium? Why can't the — why can't that person, who's always made money off ex-university's in major basketball program, why can't they sue if Title IX is violated? I think that person would have an Article III injury, Your Honor. A non-student would have an Article III injury. Correct. Right. There's a direct — there's nothing — A non-student could enforce Title IX. Is that your view? Oh, certainly, Your Honor. Your student rule is not ironclad. Your bright line is not ironclad, right? That's right, Your Honor. I think the context — we can see non-students enforce Title IX, for example, in the sexual misconduct cases. Professors bring Title IX claims, absolutely. The critical point is someone who is not a student and seeks to play on a team or says that they want to play on a team but are not a student of the university in question. I mean, again, the practical question for all Article III purposes is, do we have a concrete dispute? And if the plaintiff is not affected by the university policy in question, we don't have a concrete dispute. And someone who loses their job because a university canceled a program, they have an Article III injury. Now, would they have statutory standing under Title IX? No, they would not. Their claim would lose on the merits. But they would have Article III standing. But someone who is not affected by the absence of a team, which is precisely the individuals identified in the Beidiger and Anders v. Fresno State cases, they are not affected by the absence of a team because we have multiple contingent events that need to take place. The individual needs to apply to the university in question. They need to be admitted. Then they need to enroll. At that point only would they be affected by the absence of a team. Would even that be enough? Would they need to also demonstrate the capacity to compete at the varsity level in the sport? Or would that be required as well? The Fifth Circuit's case in Peterson, I think, indicates the appropriate approach to that issue, Your Honor. In our view, a plaintiff doesn't need to show, for injunctive purposes at least, that they would absolutely be allowed to participate on the team, that they would make the team. I didn't say that. But that they are able and ready to try out. Able and ready. Exactly. Able and ready to try out, precisely. That's right. So a plaintiff needs to show each of those events would need to occur in order to have the injury. And so when someone is not a member of the university community, they're not injured by the lack of a team. The Supreme Court has been clear again and again that when the injury depends on multiple contingent events, as it does here, the injury is not certainly impending and a plaintiff lacks standing to pursue injunctive relief. Thank you, Mr. Segal. Thank you. Mr. Segal, your rebuttal. Counsel, before you start, I want to get back to Ms. Forsberg. The — so you do plead she would have remained at UND if the ice hockey program had not been eliminated and would turn to UND if the program is reinstated, which basically pleads that she, I think, was a student. At least that's a reasonable inference you could draw from that. But opposing counsel says no, you know, the registrar says she's never been enrolled. So what do we do with that? Because my understanding was it was a facial tie. This is really important. So if you can enlighten me at all, I'd appreciate it. The declaration of the registrar was filed in this court, wasn't something that we were aware of when we pled our case. I can say she was recruited. UND said to her, we want you to come and be a student and play hockey. And then they eliminated the program and she went elsewhere. Whether she actually ever registered as a student, I honestly can't tell you. She was deterred. And in that regard, I want to emphasize that Title IX is a prophylactic statute, as the Supreme Court said in canon. Just like Title VI, and it is designed to ensure the rights of people going forward. It is not especially designed as an avenue for recovering damages for people whose rights have been violated. It's to knock down the barriers. And that's why I emphasized earlier that the injury in this case is established by the barrier. And the barrier applies not only to current ice hockey players, but those who want to be ice hockey players. And as I said earlier, I won't repeat, yes, standing to be the recipient of injunctive relief will have to be established later. But I want to emphasize that counsel is simply correct, and although not binding on this Court, this Court made the Ports decision, and the district court in Ports certified a class of potential and future students, not only present students. That issue was not part of the appeal to this Court. And Beidiger is likewise completely on point, where Beidiger is cited often by the university here, and Beidiger certified a class of future and prospective students. But you still have to have a named plaintiff. I think in those cases there was a name. I think I was on Ports. There was a named plaintiff that actually had standing, and I think that's the question here. Correct. And we think that at least three of our plaintiffs did. And the last thing I want to say is that the Title IX jurisdiction is, to some large extent, as Peterson points out, based on the Supreme Court's decision in Gratz. And Gratz, the plaintiff, was not a student who was deterred by the and who alleged successfully, all the way up to the Supreme Court, that he was, quote, ready and willing to become a student at that university. And the Supreme Court said that the ready and willing standard satisfied the requirement for Article III standing. Thank you. Thank you, Mr. Siegel. The Court appreciates both counsel's participation and argument before the hearing. It's been helpful.